F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**November 1, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ELLEN MENDELSOHN,

     Plaintiff-Appellant,

v.

SPRINT/UNITED MANAGEMENT
COMPANY,

     Defendant-Appellee.

No. 05-3150

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(03-CV-02429-KHV)**

---

Dennis E. Egan of The Popham Law Firm, P.C., Kansas City, Missouri, for
Plaintiff-Appellant.

Mark G. Arnold (John J. Yates of Husch & Eppenberger, LLC, Kansas City, Missouri
and Christine F. Miller, with him on the brief), of Husch & Eppenberger, LLC, St. Louis,
Missouri, for Defendant-Appellee.

---

Before **BRISCOE**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

Plaintiff Ellen Mendelsohn sued her former employer Defendant Sprint/United

Management Company (Sprint), alleging Sprint unlawfully discriminated against her on the

basis of age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C.

§§ 621-634. Mendelsohn alleged she was selected for termination on account of her age during a company-wide reduction in force (RIF). After a trial on the merits, a jury returned a verdict for Sprint. At issue in this appeal is whether the district court erred in excluding testimonial evidence from former Sprint employees who alleged similar discrimination during the same RIF. We have jurisdiction under 28 U.S.C. § 1291. Because the evidentiary exclusion deprived Mendelsohn of a full opportunity to present her case to the jury, we conclude the district court abused its discretion in excluding the evidence. We reverse and remand for a new trial.

I.

Mendelsohn worked for Sprint from 1989 until November 2002, when Sprint terminated her as part of an ongoing company-wide RIF. At the time, Mendelsohn was fifty-one years old and the oldest manager in her unit. Mendelsohn brought her claim under the ADEA alleging Sprint selected her for the RIF based on her age. As evidence of Sprint's alleged discriminatory animus toward older employees, Mendelsohn sought to introduce evidence that Sprint terminated five other employees over the age of forty as part of the same RIF. These employees apparently believed they too were victims of age discrimination. Through their testimony as well as her own, Mendelsohn sought to introduce evidence of a pervasive atmosphere of age discrimination at Sprint.

Prior to trial, Sprint filed a motion in limine seeking to exclude, among other things, any evidence of Sprint's alleged discriminatory treatment of other employees. Relying exclusively on Aramburu v. The Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997), Sprint

2

argued any reference to alleged discrimination by any supervisor other than Paul Reddick, Mendelsohn's supervisor, was irrelevant to the issue in this case–i.e. whether Mendelsohn's age motivated Sprint to terminate her.  Apparently persuaded by Sprint's argument, the district court granted the motion in part without much explanation, and limited Mendelsohn's evidence to "Sprint employees who are similarly situated to her."[1]  To prove the employees were "similarly situated," the district court required Mendelsohn to show Reddick supervised the employees and Sprint terminated them in close temporal proximity to Mendelsohn's termination.  Because Reddick did not supervise any of the other employees Mendelsohn sought to place on the stand, the district court excluded their testimony at trial.  Following the court's in limine ruling, Mendelsohn submitted in writing a proper offer of proof.

---

[1]  The district court, without the benefit of a proffer or a hearing, decided the motion by minute entry on the docket sheet.  The entry reads:

> Paragraph 1 is SUSTAINED as to evidence that Sprint has a pattern and practice, culture or history of age discrimination . . . .  Plaintiff may offer evidence of discrimination against Sprint employees who are similarly situated to her.  "Similarly situated employees," for purposes of this ruling, requires proof that (1) Paul Ruddick [sic] was the decision-maker in any adverse employment action; and (2) temporal proximity.

We believe this approach lacking.  As we previously have explained, district courts must be sufficiently detailed in their rulings so as to provide us with an understanding of the process the court used to reach its decision.  Otherwise, we have difficulty reviewing the trial court's decision, in particular when our review is for an abuse of discretion.  See United States v. Roberts, 88 F.3d 872, 882 (10th Cir. 1996) ("As an appellate court, we are in no position to speculate about the possible considerations which might have informed the district court's judgment. Instead, we require an on the record decision by the court explaining its reasoning in detail.").

Following an eight-day trial, the jury returned a verdict for Sprint finding Sprint did not discriminate against Mendelsohn on the basis of age. Mendelsohn then filed a motion for a new trial renewing her objections to the district court's in limine ruling. <u>See</u> Fed. R. Civ. P. 50(b). The district court denied the motion, and Mendelsohn timely appealed.

II.

Mendelsohn argues the district court committed reversible error by requiring her to show she and the other employees shared a supervisor as a precondition for admissibility of their testimony. According to Mendelsohn, the testimony of other employees in the protected age group who were subject to substantially similar RIF terminations was relevant and admissible as reflecting on Sprint's discriminatory intent in selecting Mendelsohn to the RIF. Sprint, on the other hand, maintains any evidence of its treatment toward other employees is not relevant to the determination of this action because the evidence does not make it more likely that Sprint discriminated against Mendelsohn.

We review the district court's ruling to exclude evidence for an abuse of discretion. <u>See</u> <u>Whittington v. Nordan Group Inc.</u>, 429 F.3d 986, 1000 (10th Cir. 2005). Applying this standard, we will reverse the district court only if it "made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." <u>Bryant v. Farmers Ins. Exchange</u>, 432 F.3d 1114, 1122 (10th Cir. 2005) (citation omitted). An "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ." Fed. R. Evid. 103(a). Applying these standards, we agree with Mendelsohn that the evidence she sought to introduce is relevant to Sprint's discriminatory

4

animus toward older workers, and the exclusion of such evidence unfairly inhibited Mendelsohn from presenting her case to the jury.  See, e.g., Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1168 (10th Cir. 1998) (identifying as a theory of pretext in RIF cases evidence of an employer's general policy of using a RIF to terminate older employees in favor of younger employees).

## A.

To prevail on a discriminatory discharge claim under the ADEA, a plaintiff bears the burden of proving age was the motivating factor for the employer's decision to terminate her. See Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 143 (2000).  As part of her proof, the plaintiff must persuade the jury that the employer's proffered reason for its conduct is unworthy of belief.  See Pippin v. Burlington Resources Oil And Gas Co., 440 F.3d 1186, 1193 (10th Cir. 2006).  Because direct testimony as to the employer's mental processes seldom exits, see Reeves, 530 U.S. at 141, evidence of the employer's general discriminatory propensities may be relevant and admissible to prove discrimination.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804-805 (1973) ("Other evidence that may be relevant to any showing of pretext includes . . . [the employer's] general policy and practice with respect to minority employment."); see also United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 713-14 n. 2 (1983).

We have previously recognized the testimony of employees, other than the plaintiff, concerning how the employer treated them as relevant to the employer's discriminatory intent.  See Spulak v. K Mart Corp., 894 F.2d 1150, 1156 (10th Cir. 1990).  For example, in

Greene v. Safeway Stores, Inc., 98 F.3d 554 (10th Cir. 1996), and Bingman v. Natkin & Company, 937 F.2d 553 (10th Cir. 1991), we recognized evidence the employer had terminated other older employees was relevant as evidence of a pattern of dismissal based on age. Similarly, in Coletti v. Cubb Pressure Control, 165 F.3d 767, 776 (10th Cir. 1999), we found testimony of other employees regarding how defendant treated them relevant to the defendant's discriminatory intent where "testimony establishes a pattern of retaliatory behavior or tends to discredit the employer's assertion of legitimate motive."[2]

Sprint would have us extend the "same supervisor" rule announced in Aramburu to this case. In Aramburu, we held *in the context of a discriminatory discipline action* that plaintiffs seeking to present testimony of other employees who were treated more favorably for violating the same work rule (or another of comparable seriousness) as evidence of discriminatory intent, must show they shared the same supervisor with the proffered witnesses. As we have observed elsewhere: "The 'same supervisor' test has been found to be relevant in cases involving allegations of discriminatory *disciplinary* actions." Equal Employment Opportunity Comm'n v. Horizon/CMS Healthcare, 220 F.3d 1184, 1198 n. 10 (10th Cir. 2000). In discussing Aramburu, we explained comparison of a supervisor's disciplinary action with other disciplinary action of the same supervisor is relevant to show

---

[2] Sprint points out Mendelsohn's proffered evidence resembles "pattern and practice" but she does not allege a claim for a pattern and practice of discrimination. Yet we have allowed evidence of a pattern and practice in individual cases of discrimination as circumstantial evidence of a defendant's discriminatory animus. See, e.g., Greene, 98 F.3d at 561; Bingman, 937 F.2d at 556-57; see also Gossett v. Oklahoma ex rel. Bd. of Regents for Langston University, 245 F.3d 1172, 1177-78 (10th Cir. 2001).

6

the bias of the supervisor.  For example:

> If X fires A, an Hispanic, for particular misconduct, but gives only a warning to B, a non-Hispanic, for identical misconduct, one might infer that something beyond the misconduct (such as a bias by X against Hispanics) motivated the disciplinary action. But if it was Y, not X, who decided not to impose a harsher sanction against B, one cannot infer that X's decision to fire A must have been motivated by something other than A's misconduct. X may simply have a less tolerant view toward misconduct than Y does.  Cf. Kendrick, 220 F.3d at 1233 ("Different supervisors will inevitably react differently to employee insubordination.").

Rivera v. City and County of Denver, 365 F.3d 912, 922 (10th Cir. 2004).  This case, on the other hand, is not about individual conduct but about a company-wide policy of which all Sprint's supervisors were allegedly aware.  Accordingly, we decline to extend the "same supervisor" rule beyond the context of disciplinary cases.

Since deciding Aramburu, we have only applied the "same supervisor" rule in the context of alleged discriminatory discipline.  See, e.g., MacKenzie v. City and County of Denver, 414 F.3d 1266, 1277 (10th Cir. 2005); Rivera, 365 F.3d at 922; Kendrick v. Penske Transp. Services, Inc., 220 F.3d 1220, 1232 (10th Cir. 2000).  For example, in Gossett v. Oklahoma ex rel. Bd. of Regents for Langston University, 245 F.3d 1172 (10th Cir. 2001), a gender discrimination case, we declined to extend the application of the "same supervisor" rule beyond its original context.  There we noted that while "in the context of allegations of discriminatory discipline, this court has looked to whether the plaintiff and others with whom he seeks to compare himself worked under the same supervisor," in the context of a faculty-wide policy, "the failure of the plaintiff and [the other witnesses] to share the same supervisor does not preclude the consideration of that evidence . . . ."  245 F.3d at 1177-78.

Similarly, in <u>Horizon/CMS Healthcare</u>, a pregnancy discrimination case, we explained the "same supervisor" rule was not legally relevant to the inquiry of whether a plaintiff has been the victim of an allegedly discriminatory company-wide policy. 220 F.3d at 1198 n. 10. Thus, the fact that plaintiff and the affiants did not share the same supervisor in that case did not preclude consideration of affiants' evidence.

<u>Aramburu</u> has no application where, as here, plaintiff claims to be a victim of a c*ompany-wide* discriminatory RIF. Applying <u>Aramburu</u>'s "same supervisor" rule in the context of an alleged discriminatory company-wide RIF would, in many circumstances, make it significantly difficult, if not impossible, for a plaintiff to prove a case of discrimination based on circumstantial evidence. Conceivably, a plaintiff might be the only employee selected for a RIF supervised by a particular supervisor. Meanwhile, scores of other employees within the protected group also selected for the RIF might work for different supervisors. In such cases, the constraints of <u>Aramburu</u> would preclude a plaintiff from introducing testimony from those other employees. Applying <u>Aramburu</u> to cases of discrimination based on an alleged company-wide discriminatory RIF would create an unwarranted disparity between those cases where the plaintiff is fortunate enough to have other RIF'd employees in the protected class working for her supervisor, and those cases where the plaintiff is not so fortunate. We do not think such disparity should exist.

## B.

The testimony of the other employees concerning Sprint's alleged discriminatory treatment and similar RIF terminations is "logically or reasonably" tied to the decision to

terminate Mendelsohn.  <u>Spulak</u>, 894 F.2d at 1156 n. 2 (upholding a district court's decision to allow former employees in the protected age group to testify about the circumstances surrounding their employment departure).  In this case, the other employees' testimony is logically tied to Sprint's alleged motive in selecting Mendelsohn to the RIF.  Although Mendelsohn and the other employees worked under different supervisors, Sprint terminated all of them within a year as part of an ongoing company-wide RIF.  All the employees were in the protected age group, and their selection to the RIF was based on similar criteria.  Accordingly, testimony concerning the other employees' circumstances was relevant to Sprint's discriminatory intent.

According to the dissent, the evidence Mendelsohn proffered need not be admitted because it is "devoid of independent evidence showing that Sprint had company-wide discriminatory policies."  Dissent at 4.  The dissent, however, does not explain what this independent evidence might be.  In <u>Gossett</u>, we noted that evidence regarding the discriminatory application of an enterprise-wide policy by other supervisors was admissible when the plaintiff has "other evidence of that policy[.]" 245 F.3d at 1177.  Thus, we required a plaintiff to proffer evidence, *other than her own testimony*, concerning the alleged application of said policy.  In <u>Gossett</u>, the plaintiff satisfied this requirement by introducing an affidavit from a former student and professor concerning the application of the policy.  <u>Id.</u> at 1177, 1179 n. 2.

Similarly, Mendelsohn in this case proffered independent evidence in the form of testimony from other Sprint employees who were similarly terminated during the RIF.  The

dissent mistakenly reads <u>Gossett</u> to require independent evidence apart from that evidence which Mendelsohn has proffered.  Reading <u>Gossett</u> in such a manner may place an insurmountable evidentiary burden upon a claimant entitled to prove her case of age discrimination by circumstantial evidence.  See <u>Merrick v. Northern Natural Gas Co., Div. of Enron Corp.</u>, 911 F.2d 426, 429 (10th Cir. 1990) (noting the ADEA does not require an employee to produce direct evidence of discriminatory intent; rather the employee only need show the employer's proffered justification is unworthy of belief).  We respectfully disagree with the dissent's interpretation of <u>Gossett</u>.

Moreover, the dissent claims "the district court did not apply a narrow interpretation of admissibility to the evidence of company-wide discrimination," because the district court admitted into evidence exhibits 3 and 4.  Dissent at 2.  Those exhibits are a compilation of documents Sprint used during the RIF process that includes spreadsheets containing, among other data, the names and age of Sprint employees who were being considered for termination.  In addition, the court permitted Jo Renda, Director of Human Resources, to testify concerning the use of these documents during the RIF process.  With the exception of Mendelsohn, however, none of the employees identified in the spreadsheets testified at trial.  The dissent fails to recognize the limited purpose for which the district court admitted this evidence as well as the distinct characteristic of the evidence the district court excluded in its ruling on the motion in limine.

Of particular relevance to the case was whether Sprint followed its own procedures when it selected Mendelsohn for the RIF.  In fact, the district court denied Sprint's motion

for summary judgment on this very issue.  The district court made quite clear that exhibits 3 and 4 as well as Renda's testimony was allowed to come in for the purpose of determining Sprint's compliance with its procedures:

> [T]he reason I overruled your motion for summary judgment was because there was, I thought, sufficient evidence in the record that Sprint didn't follow its own procedures.  I think that makes the whole process, you know, fair game, what was the procedure and was it followed?  And if this spreadsheet was used as part of the implementation of the RIF and it has ages on it, then I think that it's fair game for the jury.
>
> * * *
>
> It was never my intention to preclude Plaintiff from putting on evidence about the RIF, how it worked, whether Sprint followed its own RIF procedures, et. cetera.

Aplt's Supp. Appx. at 88, 92-93.  In response to Sprint's concerns regarding the improper use of this evidence the district court reiterated that its in limine ruling was aimed at excluding "other employees . . . from coming in and saying, I was RIF'd, it was because of my age" and that the ruling applied to this evidence.  Id. at 93-94.  The court made clear Mendelsohn's use of this evidence would have to conform to the in limine ruling.  See id. at 55-56.  Therefore, these exhibits were not offered for the purpose of showing pretext under the theory Sprint had a policy of favoring younger employees.  Instead, the district court admitted this evidence under a different theory of pretext by showing Sprint did not follow its own RIF criteria.  In addition, Jo Renda was able to use this evidence to find examples of older employees whom Sprint had retained, even though they were not supervised by Reddick.  Thus, the district court's in limine ruling disadvantaged Mendelsohn further because Sprint was allowed to portray itself as retaining older employees, aside from

11

Mendelsohn, even though these employees were not all supervised by Reddick.

Admission of exhibits 3 and 4 did not remedy the error the district court made in excluding evidence concerning Sprint's alleged treatment of other employees and the circumstances surrounding their RIF termination. The nature of the evidence Mendelsohn proffered is vastly different from the evidence the jury considered–merely names and dates of birth. Evidence of an employer's alleged prior discriminatory conduct toward other employees in the protected class has long been admissible to show an employer's state of mind or attitude toward members of the protected class. See, e.g., McDonnell Douglas Corp., 411 U.S. at 804; Aikens, 460 U.S. at 713-14 n. 2; Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1102-03 (8th Cir. 1988); Hunter v. Allis-Chalmers Corp., Engine Div., 797 F.2d 1417, 1423-24 (7th Cir. 1986). These other employees should have been allowed to take the stand and testify subject, of course, to any district court ruling regarding the proper use and limitations of such testimony.[3]

Generally, a court's evidentiary ruling is entitled to deference. See Shugart v. Central Rural Elec. Co-op., 110 F.3d 1501, 1508 (10th Cir. 1997). But the court's discretion over evidentiary matters should not unfairly prevent a plaintiff a full opportunity to present her case. See Gossett, 245 F.3d at 1178. Blanket pretrial evidentiary exclusions, in particular, "can be especially damaging in employment cases, in which plaintiffs must face the difficult

---

[3] We do not disagree with the dissent that statistical evidence to support an inference of an company-wide policy is useful, and perhaps quite convincing. See Dissent at 4. But while "[s]tatisitical evidence may, in certain circumstances, be relevant to this purpose[,]" we have never required it. Beaird, 145 F.3d at 1168.

task of persuading the fact-finder to disbelieve an employer's account of its own motives."

Hawkins v. Hennepin Technical Center, 900 F.2d 153 (8th Cir. 1990) (citation omitted).  The

evidence which Mendelsohn seeks to present, "is certainly not conclusive evidence of age

discrimination itself, but it is surely the kind of fact which could cause a reasonable trier of

fact to raise an eyebrow, and proceed to assess the employer's explanation" for its motive in

terminating Mendelsohn.  Greene, 98 F.3d at 561.  Age as a motivation for Sprint's selection

of Mendelsohn to the RIF becomes more probable when the fact-finder is allowed to consider

evidence of (1) an atmosphere of age discrimination, and (2) Sprint's selection of other older

employees to the RIF.[4]

C.

Finally, Sprint argues the testimony should be excluded under Fed. R. Evid. 403.

Rule 403 allows a district court to exclude relevant evidence when concerns over unfair

---

[4]  The dissent characterizes the question of admissibility as a classic judgment call and readily acknowledges that had the district court admitted the evidence it would have acted within its discretion.  The dissent, however, overlooks our established rule that a district court necessarily abuses its discretion "when it commits an error of law," Wyandotte Nation v. Sebelius, 443 F.3d 1247, 1252 (10th Cir. 2006), or "fails to consider the applicable legal standard . . . ."  Ohlander v. Larson, 14 F.3d 1531, 1537 (10th Cir. 1997).  For instance, in Thiessen v. General Electric Capital Co., 267 F.3d 1095, 1105-08 (10th Cir. 2002), we held the district court abused its discretion in decertifying a class of plaintiffs because the court failed to consider the "pattern and practice" legal framework applicable to the plaintiffs' claim of discrimination.  In the same manner, the district court here abused its discretion when it excluded the testimonial evidence based upon its erroneous conclusion that Aramburu controlled the fate of the evidence in this case.  See also Floyd v. Ortiz, 300 F.3d 1223, 1227 (10th Cir. 2002) (holding the district court abused its discretion in denying the plaintiff's request for rehearing because the district court relied on an erroneous legal premise to do so).

prejudice, confusion, or waste of time substantially outweigh the probative value of the evidence. Sprint argues that allowing the evidence would prejudice Sprint because it would result in Sprint having to defend multiple claims of discrimination. To be sure, the district court retains its power to limit cumulative and marginally relevant testimony. But otherwise, we disagree. Excluding otherwise admissible evidence under Rule 403 "is an extraordinary remedy [that] should be used sparingly." United States v. Roberts, 88 F.3d 872, 880 (10th Cir. 1996). "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir. 2000) (internal quotations omitted). Little doubt exists that the admission of evidence about other alleged episodes of discrimination would inconvenience Sprint. But the fact Sprint would have to rebut this testimony is not in itself enough to outweigh the probative value of Mendelsohn's proffered evidence. See Bingman, 937 F.2d at 557. Based on the record before us, we cannot say the evidence is unduly prejudicial.[5]

Accordingly, for the reasons stated above the district court's order denying Mendelsohn's motion for a new trial is reversed. We remand to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.[6]

---

[5] Sprint lastly argues any error the district court might have made was harmless because Ms. Mendelsohn did not have a submissible case of age discrimination. Based on the record before us, and in light of the evidence the district court excluded, we conclude Ms. Mendelsohn has a submissible case to present to the jury.

[6] Nothing in our ruling is intended to limit the district court's discretion during trial to issue limiting instructions or rulings concerning the proper purpose for which

05-3150, *Mendelsohn v. Sprint/United Management Co.*

**TYMKOVICH**, Circuit Judge, dissenting.

I respectfully dissent because I do not believe the district court abused its discretion in its evidentiary rulings excluding testimony. At the outset, I agree that the district court's ruling is difficult to decipher, especially looking solely at the minute order. In the context of the trial, however, I think the court's ruling is clear enough—the proffered testimony from other employees failed to satisfy the relevancy and prejudice requirements of Rule 403. Moreover, I believe the majority makes a mistake in holding that testimony from other employees not similarly situated is admissible even where the plaintiff has made no independent showing of a company-wide policy of discrimination.

## A.

A brief review of the evidence the court admitted will place its ruling in perspective. First, despite its pre-trial ruling regarding the witness testimony, the court admitted Exhibits 3 and 4, voluminous documents from Sprint's "succession planning" file, including notes on employees slated for termination pursuant to the company-wide RIF. Both exhibits show that Sprint kept information on the gender, ethnicity and age of employees alongside other information on their performance and perceived "potential." Significantly, Exhibit 4 also contains notes indicating that other workers over 40, who did not report to Reddick, were terminated as part of the RIF.

Second, the court also allowed testimony regarding the RIF dismissal of Marc Elster,

---

Mendelsohn's evidence may be introduced.

one of Reddick's peers who was 51 at the time of his termination.  In addition, Jo Renda, a
Sprint executive, was called as an adverse witness at trial and examined about the policies
behind the RIF and the employees identified in Exhibit 4.  She testified regarding fired
employees who did not report to Reddick.

This evidence shows that the district court did not apply a narrow interpretation of
admissibility to the evidence of company-wide discrimination proffered by Mendelsohn.  As
the court explained in response to Sprint's objection to the admission of Exhibit 4,

> I'm afraid that you don't really comprehend what I was saying in the motion
> in limine – or on the motion in limine.  It was never my intent to preclude
> plaintiff from putting on evidence about the RIF, how it worked whether
> Sprint followed its own RIF procedures, et cetera.  I think because of the
> factual background of plaintiff's claim, we have to get into what happened
> to other employees.

> *   *   *

> [Defense counsel] wanted the court [via its order in limine] to prohibit other
> employees . . . from coming in and saying, I was RIF'd, it was because of my
> age and that sort of thing.  So that's where I was targeting my ruling.  And I
> stand by that ruling.  I don't want that kind of evidence to come in.  But I
> think that's a totally different question from the question whether the RIF,
> which is your stated nondiscriminatory reason, is a pretext for age
> discrimination.

(Tr. at 93–94.)

Finally, in addition to admitting actual evidence of pretext, the district court rejected
a jury instruction proffered by Sprint, which would have instructed jurors to consider only
evidence about employees similarly situated to Mendelsohn.  The court explained that

evidence outside of Reddick's chain of command had been allowed to come in as relevant to the question of pretext: "The reason I said plaintiff could offer that sort of evidence was because it might yield an inference that the so-called legitimate nondiscriminatory reasons were pretextual." (Tr. at 1228.)  Indeed, the court included an instruction that reminded the jury that it could, on the basis of all evidence presented at trial, reject Sprint's reasons for firing Mendelsohn and "conclude that plaintiff's age was a determining factor in [Sprint's] decision to terminate her employment."  (Jury Instr. 12.)

In sum, it appears to me that the plaintiff had an adequate opportunity to introduce relevant evidence of Sprint's corporate policies and practices surrounding the RIF and argue that the RIF was itself a pretext for age discrimination.  I am further convinced of this after studying the proposed testimony of the five witnesses proffered by Mendelsohn and excluded by the district court.  Their proposed testimony seems a mixture of hearsay and speculation that would be marginally admissible in any event.  I cannot say that the court erred in excluding such testimony under the standards of Rule 403.

To be sure, the testimony may have helped Mendelsohn's case.  But this is not the question here.  We are properly concerned with whether the court abused its discretion in excluding the testimony.  I think not.  This seems a classic judgment call.  I readily admit that the court would not have erred in admitting the evidence, *see, e.g., Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990), but I am equally confident that the court did not abuse its discretion in choosing to exclude it.

**B.**

3

The larger problem with the majority's position is it suggests that anecdotal evidence from employees throughout a large organization will be *per se admissible* when offered in the context of alleged discrimination in a RIF. This appeal illustrates the hazard of such an approach for several reasons.

The first reason is the lack of any statistical or other direct evidence that supports an inference of enterprise-wide discrimination. Given the size of Sprint, the fact that Mendelsohn found five former employees who believed they were victims of age discrimination is not meaningful until a specific evidentiary foundation has been laid. The proffer of evidence here is devoid of independent evidence showing that Sprint had company-wide discriminatory policies. Even taking as true Mendelsohn's assertion that these witnesses would provide credible evidence that managers other than Reddick were motivated by discriminatory animus, this does not in and of itself support the conclusion that Reddick was so motivated.[1] Nor does it establish that the RIF's "subjective criteria" was a pretext for age discrimination. While Sprint may well have had policies designed to discriminate against older employees, without more, the excluded testimony does nothing to establish that fact, nor does it directly support an inference that Mendelsohn's termination was wrongfully motivated. *See Carpenter v. Boeing Co.* 456 F.3d 1183 (10th Cir. 2006) (discussing use of statistical evidence to support claim of disparate treatment). The evidence

---

[1] Of the five proffered witnesses, one was fired a full year before Mendelsohn and another was *hired* at age 52. The others had grievances related to their supervisors that are too general to credit on this record.

4

must tend to show that the company had a policy to discriminate, not merely a policy applied in a discriminatory manner by an individual supervisor or supervisors.[2]

The second and more important hazard of the majority's approach is the narrow reading it gives to *Aramburu*.  The so-called "same supervisor" rule articulated in that case recognizes that where an employee has putatively been fired for the violation of a workplace rule, an inference of discrimination is more likely where the same supervisor disciplines similarly situated employees differently.  *Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1403 (10th Cir. 1997).

But it is equally plausible that an employer could have a *company-wide* policy of using disciplinary actions as a pretext for unlawful discrimination.  In such a case, I suspect we would modify the applicable relevancy standard in order to account for and allow evidence of a company-wide policy.

I would do the same in the RIF context and apply the *Aramburu* rule in cases like this

---

[2] This is not to suggest that some of the proffered evidence *might* be relevant.  But having said this, the evidence must still satisfy the rules of evidence.  It is not enough for a former employee to claim discrimination.  We have always required a nexus between the testimony and the allegation, either through personal knowledge or statistical support.  Without more foundation, in my view Mendelsohn has not demonstrated a Sprint-wide policy of discrimination embodied in the RIF.  And none of the excluded evidence ties the policy to the decision to terminate her.

The majority relies on *Gossett v. Board of Regents*, 243 F.3d 1172 (10th Cir. 2001).  But *Gossett* cannot be read broadly to suggest that any proffer of evidence is automatically admissible, without meeting the requirements of Rules 401 or 701.  In that case, the court concluded the witnesses (at the summary judgment stage) claimed personal knowledge of the discriminatory policy and its application.

one unless "independent evidence of specific enterprise-wide policy" has been developed.
*Rivera v. City and County of Denver*, 365 F.3d 912, 922 (10th Cir. 2004).  Since Mendelsohn
did not establish a foundation that the proffered evidence would support such a finding, and
since she otherwise had the opportunity to present evidence to the jury of other older
employees subject to the RIF, the district court did not abuse its discretion in excluding the
additional witness testimony.[3]

    Our holding to the contrary creates a rule that suggests even the most tangentially
relevant and prejudicial testimony by former employees is per se admissible.  Such a rule
runs counter to our traditional deference to district courts as the primary arbiters of
admissibility.

---

[3] The majority alternatively suggests that our "established rule that a district court
necessarily abuses its discretion when it commits an error of law . . . or fails to consider
the applicable legal standard" forces reversal here.  Majority Op. at 12 n.4 (internal
quotations and citations omitted).  Assuming, for the sake of argument, that this rule
applies in the context of an evidentiary ruling and that the legal error in Mendelsohn's
case was not harmless, all the rule would require is reversal and remand for application of
the proper rule.  The majority has not done this, but has instead insisted on finding
Mendelsohn's proffered evidence to be per se admissible despite the evidentiary
infirmities.  The majority's note on the operation of our law regarding legal error is
therefore logically incongruent with its holding that Mendelson's evidence must be
admitted at a new trial.